IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| John David Bauer, II and | ) |
| Carolyn Louise Bauer, | ) Case No.: 11-41910-BGC-7 |
| | ) |
| Debtors. | ) |
| | |
| John David Bauer, II and | ) |
| Carolyn Louise Bauer, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) A. P. No.: 12-00037 |
| | ) |
| JP Morgan Chase Bank, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The matter before the Court is the Defendant's Motion to Dismiss Count Two of the Complaint filed on April 6, 2012. Docket No. 4. After notice, a hearing was held on April 18, 2012. Appearing were: Bradford Botes, the attorney for the Plaintiffs; and Jason Bobo, the attorney for the Defendant. The matter was submitted based on the arguments of counsel and the pleadings.

**I. Findings of Fact**

The debtors filed their bankruptcy case on July 25, 2011. In their schedules they listed a secured debt in the amount of $100,311 to Chase Home Finance as a first mortgage on their home.[1] The debtors indicated on their "Chapter 7 Individual Debtor's

---

[1] On November 16, 2001, the debtors executed a Note to lender HomeSouth Mortgage Services, Inc. Affidavit filed November 17, 2001, Docket No. 23, Page 6. Also, on November 16, 2001, the debtors signed a Mortgage to HomeSouth Mortgage Services, Inc. Affidavit, Docket No. 23, Page 11. On November 30, 2001, HomeSouth Mortgage Services, Inc. transferred its rights in the note to First Union Mortgage Corporation. Affidavit, Docket No. 23, Page 9. On November 23, 2001, HomeSouth Mortgage assigned its interests in the mortgage to Mortgage Electronic Registration Systems, Inc. as nominee for First Union Mortgage Corporation. Affidavit, Docket No. 23, Page 25. On October 18, 2011, Mortgage Electronic Registration Systems, Inc. As nominee for First Union Mortgage Corporation assigned its rights

Statement of Intention" that the property would be surrendered.

On October 28, 2011, JPMorgan Chase Bank ("Chase") filed a Motion for Relief from Stay. Docket No. 17. After notice a hearing was scheduled for December 6, 2011. Prior to the hearing, the Court received notice that the matter was settled. A proposed order was submitted and entered by the Court on December 2, 2011, granting the motion based on the agreement of the parties. Docket No. 30. The debtors received their discharge on January 25, 2012. Docket No. 33.

Between the time the debtors notified Chase of their intention to surrender the property and when the debtors received their discharge, the debtors received several letters from Chase.

In a letter dated November 5, 2011, and postmarked November 8, 2011, Chase informed the debtors that Sarah Goulet had been assigned as their Customer Assistance Specialist. Complaint, A.P. Docket No. 1, Exhibit B.

In a letter dated December 13, 2011, and postmarked December 14, Chase sent a letter to the debtors confirming receipt of the debtors' request for a loan modification. Complaint, A.P. Docket No. 1, Exhibit C.

In a letter dated December 14, 2011, Chase informed the debtors that James White had been assigned as their Customer Assistance Specialist. Complaint, A. P. Docket No. 1, Exhibit D.

In a letter dated December 23, 2011, postmarked December 27, 2011, Chase informed the debtors that Krystal Collar had been assigned as their Customer Assistance Specialist. Complaint, A. P. Docket No. 1, Exhibit E.

In a letter dated December 28, 2011, postmarked January 9, 2012, Chase informed the debtors that it was canceling the debtors' trial period plan and participation in the loan modification program because the debtors had not made all of their payments as required by the program. Complaint, A. P. Docket No. 1, Exhibit F.

On February 1, 2012, counsel for the debtors sent a letter to Chase demanding that they stop communicating with the debtors because the debtors were in an active bankruptcy case. Complaint, A. P. Docket No. 1, Exhibit G.

In a letter dated January 31, 2012, postmarked February 2, 2012, Chase informed the debtors that it was canceling the debtors' trial period plan and participation in the loan modification program because the debtors had not made all of their payments as required by the program. Complaint, A. P. Docket No. 1, Exhibit I.

---

in the mortgage to JPMorgan Chase Bank, National Association. Affidavit, Docket No. 23, Page 26.

In a letter dated February 6, 2012, postmarked February 7, 2012, Chase informed the debtors that they were following up on the debtors' request to cancel participation in the mortgage modification program.  Complaint, A. P. Docket No. 1, Exhibit J.

In a letter dated February 7, 2012, postmarked February 9, 2012, Chase informed the debtors that Shirley Draper had been assigned as their Customer Assistance Specialist.  Complaint, A. P. Docket No. 1, Exhibit K.

In a letter dated February 14, 2012, Chase informed the debtors that Robert Covell had been assigned as their Customer Assistance Specialist.  Complaint, A. P. Docket No. 1, Exhibit L.

In addition to the letters the debtors received from Chase, Chase has called the debtors over 26 times.  Complaint, A. P. Docket No. 1, Exhibit M.

## II. Conclusions of Law

The Plaintiffs' second claim for relief in the complaint is for the Defendant's violation of the Fair Debt Collection Practices Act.  The Defendant filed a Defendant's Motion to Dismiss Count Two of the Complaint.  The question is whether this Court has jurisdiction to hear Count Two.

In Imel v. Everhome Mortgage Co., Adv. Proc. No.: 11-03031-MAM (Bankr. S.D. Ala. Sept. 2, 2011), Judge Margaret Mahoney discussed this issue.  She wrote:

> Bankruptcy court's derive subject matter jurisdiction from 28 U.S.C. § 1334(b). It states that "district courts shall have original but exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The effect of § 1334(b) is to carve out three specific categories where jurisdiction is proper: (1) cases arising under title 11, (2) cases arising in title 11, and (3) those related to cases under title 11.  In re Toledo, 170 F.3d 1340, 1344 (11th Cir. 1999).  The district courts, in turn, have authority to specifically endow the three categories of jurisdiction upon bankruptcy courts through 28 U.S.C. § 157(a). Shortsleeve, 349 B.R. at 299.  "The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases." Toledo, 170 F.3d at 1344.  In this district, the District Court has entered a general Order of Reference referring title 11 proceedings to this Court. 28 U.S.C. § 157(b) allows bankruptcy judges to hear and enter appropriate orders and judgments as to matters referred to them by the district court, including core proceedings. Section 157(b)(2) details a nonexhaustive list of core proceedings.

3

As to the three categories of jurisdiction, courts in this circuit adhere to the following tests. Matters arising under title 11 are "matters invoking a substantive right created by the Bankruptcy Code." Toledo, 170 F.3d at 1345. "Proceedings that arise in a case under title 11 are 'generally thought to involve administrative-type matters' or 'matters that could arise only in bankruptcy.'" Wynne, 422 B.R. at 770. "The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." Id. (quoting Carter v. Rodgers, 220 F.3d 1249, 1253 (11th Cir. 2000)).

Here, Plaintiffs' FDCPA and FCCPA claims do not fall into any of the three specific categories of jurisdiction granted to this Court. Plaintiffs' FDCPA and FCCPA claims do not arise under title 11 because they "are not causes of action created by the Bankruptcy Code and can exist outside the bankruptcy case." Wynne, 422 B.R. at 770. Further, Plaintiffs' FDCPA and FCCPA claims are not core proceedings. See 11 U.S.C. § 157(b)(2).

Moreover, Plaintiffs' FDCPA and FCCPA claims do not arise in a case under title 11 because they are not bankruptcy administrative matters and could, and should, exist independent of title 11. Wynne, 422 B.R. at 770; Shortsleeve, 349 B.R. at 300 (speaking specifically to FDCPA claims). Any appropriate federal district court could properly entertain Plaintiffs' FDCPA claims pursuant to 15 U.S.C. § 1692k(d) and, through 28 U.S.C. § 1367, could likely exercise jurisdiction over Plaintiffs' related state law claims. See Wynne, 422 B.R. at 770.

Finally, Plaintiffs' FDCPA and FCCPA claims are not related to the bankruptcy case. In considering whether to exercise "related to" jurisdiction over a combination of FDCPA and state law claims derived from post-petition conduct, many courts have held that the causes of action are not related to the bankruptcy case. Wynne, 422 B.R. at 771 (detailing a handful of courts that have declined jurisdiction). Here, the result is the same. Plaintiffs' FDCPA and FCCPA claims arose post-petition—after the full administration and resulting discharge in Plaintiffs' Chapter 7 case. As such, those claims are not property of the estate pursuant to 11 U.S.C. § 541. Thus, the prosecution of those claims, regardless of their success or failure, will have no effect on the administration of the bankruptcy estate. Shortsleeve, 349 B.R. at 300. Rather, any recovery from Plaintiffs' FDCPA and FCCPA claims would only serve to benefit the Plaintiffs themselves, rather than the bankruptcy estate. Wynne, 422 B.R. at 772.

> In sum, this Court lacks subject matter jurisdiction to hear Plaintiffs' Second, Third, Fourth, and Fifth Claims. As additional grounds, the United States Supreme Court's recent decision in Stern v. Marshall, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), dictates the same result. In that case, the Supreme Court held that a bankruptcy court could not constitutionally exercise jurisdiction over a state law counterclaim asserted by a debtor in her bankruptcy case. Although the Plaintiffs' in this case do not assert counterclaims, their FDCPA and FCCPA claims, like the counterclaim in Stern, are non-core and not integral to the bankruptcy case. The Stern decision counsels that this Court lacks jurisdictional power to adjudicate claims like Plaintiffs' Second, Third, Fourth, and Fifth Claims, which clearly fall outside of the bankruptcy case.

Order at 5-7, September 2, 2011, Docket No. 14.

This Court agrees with Judge Mahoney and finds that it does not have jurisdiction to hear Count Two of the Plaintiff's Complaint.

As such, it is **ORDERED, ADJUDGED and DECREED** that:

1. Defendant's Motion to Dismiss Count Two of the Complaint is **GRANTED**;

2. The Clerk of Court shall schedule a status conference to determine a trial date for Count I of the Complaint.

Dated: September 24, 2012      /s/Benjamin Cohen
                                                      BENJAMIN COHEN
                                                      United States Bankruptcy Judge

BC:pb